764 So.2d 235 (2000)
Laura Loftin NEILL, Plaintiff-Appellee,
v.
Timothy Haze NEILL, Sr., Defendant-Appellant.
No. 33,398-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
Pugh T. Huckabay, III, Shreveport, Counsel for Appellant.
David L. White, Bossier City, Counsel for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
WILLIAMS, J.
The defendant, Timothy Neill, Sr., appeals from a district court judgment modifying his child support obligation. Defendant *236 contends the trial court erred in increasing the child support award and in allowing the plaintiff, Laura Loftin Neill Hargis (Mrs. Hargis) to claim the federal and state income tax dependent child deductions. For the following reasons, we affirm.

FACTS
Mr. Neill and Ms. Loftin were married on April 17, 1987. Of their union, one child, Timothy, was born. The couple separated in 1989. Pursuant to an agreement of the parties, the court signed a judgment on September 17, 1991 giving the parents joint custody of the child, making Ms. Loftin the domiciliary parent and awarding Ms. Loftin $260 per month in child support. The Neill's divorced in February 1992; the judgment of divorce continued the $260 monthly support obligation in favor of Ms. Loftin.
Subsequently, Ms. Loftin remarried and became Mrs. Hargis. On August 10, 1998, Mr. Neill filed in the district court a rule to show cause urging that Mrs. Hargis had not complied with the joint custody plan and was planning to relocate to Wyoming. On August 11, 1998, the trial court issued an ex parte order prohibiting Mrs. Hargis from relocating with Timothy to Wyoming and fixing the matter for a hearing on September 1, 1998. In the meantime, the parties met twice and agreed to resolve their differences. On August 14, 1998, the parties appeared before the court. Mrs. Hargis was not represented by counsel and the court signed a judgment pursuant to the parties' consent. The judgment, inter alia, reiterated the joint custody agreement, maintained Mr. Neill's support obligation at $260 per month, but extinguished the obligation during the five weeks in the summer when Timothy lived with Mr. Neill, and allowed Mrs. Hargis to relocate to Wyoming. Mrs. Hargis agreed to pay one-half of both the court costs and Mr. Neill's legal fees.
On March 18, 1999, Mrs. Hargis filed a rule to show cause in the district court seeking an increase in the child support award. She argued that since the 1991 award, there had been a significant change of circumstances justifying an increase commensurate with the child support guidelines. She also sought, inter alia, an increase from 0% to 50% in Mr. Neill's support obligation during Timothy's summer visit. Mr. Neill answered this rule and reconvened against Mrs. Hargis, seeking entitlement to the federal and state dependent child deductions.
On May 11, 1999, the court conducted the trial on these issues. Mr. Neill related that in 1991, he earned $7.80 per hour. In July 1998 Mr. Neill started his current job where he earns $13.50 per hour for regular hours and $20.25 per hour for overtime work. Mr. Neill said that, at the time of trial, he was working between 40 and 50 hours per month more overtime than he worked in July or August 1998, and that for the month of May 1999 he would probably earn about $810 more than he did for the month of August 1998. He also said that the amount of overtime he worked varied from month to month depending upon the amount of work coming into the business which in turn varied with the seasons.
Mrs. Hargis testified that as late as 1995 she was earning approximately eight dollars per hour, but that she was currently unemployed while she pursued a college degree in biochemistry. She testified that Mr. Neill had actually been paying $338 per month instead of $260 per month to cover Timothy's health insurance, but that she agreed to the reduction of the actual amount to $260, and to the 1998 custody and support judgment as a whole, due to the time pressure of her imminent move to Wyoming with her new husband. With regard to the child support award portion of that agreement, she testified, "We didn't look at any numbers or anything. He was just giving me that."
At the conclusion of the trial, the court noted that the parties did not calculate the *237 amount of support owed based upon a guidelines worksheet in the 1991 and 1998 proceedings. The court gave its opinion that the 1991 calculation of support was merely carried over by the parties into the 1998 agreement and noted that Mr. Neill's salary had substantially changed even since the latter agreement. The court then calculated the support obligation based upon the guidelines work sheet. Using figures of $9 per hour as imputed income to Mrs. Hargis and $13.50 per hour as Mr. Neill's income, the court calculated Mr. Neill's support obligation as $343.80 per month. In addition, the court added 10% of Mr. Neill's overtime pay to his monthly obligation. Without discussion, the court maintained the dependent child tax deduction with Mrs. Hargis. On June 16, 1999, the court signed a judgment finalizing its decision. Mr. Neill now appeals.

DISCUSSION
Mr. Neill contends the trial court erred in increasing his support award from the agreed-upon amount in the 1998 consent judgment because Mrs. Hargis did not prove that there had been a change of circumstances since that time.
LSA-R.S. 9:311 provides, in part:
A. An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
We recognize, as did the trial court, that the 1991 and the 1998 child support orders were based on consent judgments and not the application of the guidelines. Indeed, the 1999 child support award is the first award calculated utilizing the guidelines. LSA-R.S. 9:315.1 provides in part.
A. The guidelines set forth in this Part are to be used in any proceeding to establish or modify child support filed on or after October 1, 1989. There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.
B. The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
. . .
D. The court may review and approve a stipulation between the parties entered into after the effective date of this Part as to the amount of child support to be paid. If the court does review the stipulation, the court shall consider the guidelines set forth in this Part to review the adequacy of the stipulated amount, and may require the parties to provide the court with the income statements and documentation required by R.S. 9:315.2.
In Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, the supreme court interpreted LSA-R.S. 9:315.1 in the context of a rule to increase a child support award. There, the divorcing parents of a minor child entered into a consent agreement as to the amount of the child support obligation. This consent judgment was not based upon, or reviewed according to, the child support guidelines. About two years after the consent judgment, the mother filed a rule to increase the child support. The trial court refused to increase the award on the grounds that the parties had earlier agreed to the award and that the mother had not shown a change in circumstances. The appellate court affirmed, but the supreme court reversed, holding that the trial court should *238 have considered whether the consent judgment complied with the guidelines (including the guidelines rules for deviation) in determining whether it should increase the award. The court recognized that consent support judgments are a species of compromise, but held that such compromises must not derogate from laws enacted for the protection of the public interest such as the child support guidelines.
With regard to the standard for proving a change in circumstances, LSA-R.S. 9:311 A, the court stated that a change in circumstances is to be determined on a case-by-case basis and clearly falls within the great discretion of the trial court. The court concluded that each case will rise or fall on the peculiar facts adduced, and an appellate court will not disturb the trial court's decision in these matters, absent a clear abuse of discretion. Stogner, supra at 770.
In light of the pronouncements in Stogner, we believe the trial court was correct in recalculating Mr. Neill's child support obligation according to the child support guidelines. Because neither the 1991 nor the 1998 consent judgments took the guidelines into account, Stogner counsels that these judgments should not be relied upon in determining whether a change of circumstances warrants the modification of a support award. Accordingly, we believe that neither the 1991 nor the 1998 judgment should form the baseline for a change of circumstances.
Likewise, we find no error in the trial court's determination that Mr. Neill's current income warranted an $83.80 per month fixed increase in the support award and the award of 10% of Mr. Neill's overtime pay. Unlike the earlier awards, this award was based upon the child support guidelines. LSA-R.S. 9:315 A states that this amount is rebuttably presumed to be the proper amount. Indeed, the court appears to have anticipated Stogner in its reasons for increasing the amount of the award when it indicated that Mr. Neill got a "good deal" on the consent award, but that such an award is not forever fixed.
Mr. Neill also contends the trial court erred in allowing Mrs. Hargis to claim the federal and state dependent child care deductions.
LSA-R.S. 9:315.13 provides:
B.(1) The non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the federal and state tax dependency deductions if, after a contradictory motion, the judge finds both of the following:
(a) No arrearages are owed by the obligor.
(b) The right to claim the dependency deductions or, in the case of multiple children, a part thereof, would substantially benefit the non-domiciliary party without significantly harming the domiciliary party.
We find no error in the trial court's allocation of the tax deductions to Mrs. Hargis. Although Mr. Neill proved some of the requirements of this article at trial, there was no evidence presented to prove that the deductions would substantially benefit him, without substantially harming Mrs. Hargis. Further, the trial court did not find that Mr. Neill needed the deductions to maintain his ability to pay the child support obligation. See, e.g., Warlick v. Warlick, 27,389 (La.App.2d Cir.9/29/95), 661 So.2d 706, 712.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Costs are assessed to the defendant, Timothy Neill, Sr.
AFFIRMED.