924 So.2d 471 (2006)
Tracy McCREADY, Plaintiff-Appellant,
v.
Patricia Ann McCREADY, Defendant-Appellee.
No. 41,026-CA.
Court of Appeal of Louisiana, Second Circuit.
March 8, 2006.
Charles L. Cook, Monroe, for Appellant.
Culpepper & Carroll, PLLC, by Bobby L. Culpepper, Teresa C. Carroll, Jonesboro, for Appellee.
Before WILLIAMS, CARAWAY and MOORE, JJ.
CARAWAY, J.
The mother petitioned for joint custody of the three minor children five years after *472 the parents' divorce judgment which was rendered in March 2000. The father initially obtained sole custody by default judgment at the time of the divorce. In the present action, after two days of testimony, the trial court modified the sole custody award to joint custody and designated the mother as the domiciliary parent. The father objected, asserting the application of the rule of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). The father appeals the trial court's ruling as violative of the Bergeron rule and as not in the best interest of the children. We affirm.

Facts
Tracy McCready ("Tracy") and Patricia McCready Lynch ("Patricia") married in 1992 and separated in 1999 after three sons were born of the marriage: Jesse, age 11, Jacob, age 9, and Justin, age 8. In 2000, Patricia was served with Tracy's petition for divorce in which he requested sole custody of the children. In this proceeding, Patricia acknowledges that she failed to appear in the original divorce action in which Tracy obtained sole custody of the children. She explained that Tracy obtained representation through legal aid services and that she could not do likewise because of the conflict. Since she could not afford to hire private counsel, she was left unrepresented at the time of their divorce. Matters of record reveal that Patricia was never served with the March 2000 judgment and only learned of Tracy's designation as sole custodian eight months after the rendition of the judgment. Nevertheless, both Tracy and Patricia testified that between 2001 and 2004, they basically worked out a shared custody arrangement consisting of one week on and one week off.
The testimony indicated that Patricia did not finish high school and works part time as a waitress, two evenings a week. She primarily stays at home caring for the three children and two younger children born during the marriage with her new husband, Chris, who is attending Louisiana Tech University. During alternating weeks when Tracy has primary custody, Patricia looks after the boys in the mornings after Tracy drops them off on his way to work before the school bus picks them up in front of her house. Likewise, she cares for the children after school when the school bus drops the boys off at her house before Tracy picks them up after work.
Based on the evidence concerning this arrangement, the trial court found that Patricia and Tracy shared custody during the preceding years in spite of the formal custody order in Tracy's favor. The court awarded joint custody and designated Patricia the domiciliary parent. The trial court in its oral ruling directed the parties to implement a joint custody plan pursuant to which the children resided with Patricia during the school year. Tracy's custody is to extend for two out of every three weekends between Friday and Sunday, and through Monday in the event of a holiday. He is also given visitation on one evening during each week of the school year. Tracy's periods of custody also include the school vacation weeks of Spring Break and Thanksgiving. The parties were ordered to split custody during Christmas vacation. According to the trial court's oral ruling, the children were ordered to reside with Tracy during the summer beginning three days after the school year ended and concluding three days before school started. In the summer, Patricia would exercise visitation between Friday and Sunday on alternating weekends. Additionally, pursuant to the oral ruling, Patricia was to receive one full week of custody during the summer while the children resided with Tracy.
*473 The judgment designated Patricia the primary domiciliary parent, incorporated a custody visitation schedule in the form of a written "joint custody implementation plan" and ordered Tracy to pay $300.00 child support per month. The visitation schedule agreed to by the parties in the joint custody implementation plan differed slightly from the schedule articulated by the trial court in its oral ruling in the following particulars:
 The summer holiday from 72 hours after school is out until 72 hours before school starts back with PATRICIA ANN LYNCH having every other weekend and two weeks out of the summer holiday, upon the giving of thirty (30) days notice to TRACY McCREADY.
 PATRICIA ANN LYNCH will keep the children during each day that TRACY McCREADY is working during the summer.
Tracy appealed the custody judgment and Patricia answered the appeal.

Discussion

I.
Tracy first contends that the prior default judgment awarding him sole custody in 2000 was a considered decree, placing on Patricia the heavy burden of proof rule of Bergeron v. Bergeron, supra. The Bergeron rule states that when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child. Id. at 1200.
The ruling in Bergeron was made after the 1977 codification of the best interest of the child principle which occurred by amendment to former Civil Code Article 157. That overriding rule is now set forth in Civil Code Article 131 which states that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." Bergeron affirmed that the evidentiary and procedural rule for the heavier burden of proof, though judicially created, would continue to apply in change of custody cases for the purpose of enforcing and protecting the child's substantive rights embodied in the best interest principle. See, Revision Comments (c) to La. C.C. art. 137. The concerns for ending litigation, preserving the child's established mode of living, conserving judicial resources and preventing inconsistent decisions underlay the formulation of the heavy burden of proof rule as recognized in the ruling of our supreme court.
In this case, the trial court did not apply the Bergeron burden of proof. Instead, using the lesser evidentiary standard applicable in change of custody disputes involving stipulated custody judgments or agreements, the court appropriately applied the test of whether there had been a material change in circumstances since the original custody decree was entered. See Evans v. Lungrin, 97-541, 97-577 (La.2/6/98) 708 So.2d 731. The court expressly found a material change of circumstances, and its reasons for that ruling, which Tracy admits as accurate and appropriate, have significance for the rejection of Bergeron in this case. The court found that based upon the practice of both parents after the default judgment, the actual custody of the children had been shared by the parents for four years. Although sole custody was awarded in the judgment, joint custody had almost always been practiced. Tracy concedes that if Bergeron does not apply, this material change in *474 circumstances has in fact existed, allowing for a consideration under Evans, supra, of the proposed modification of custody.
The question presented therefore is whether the default judgment under these circumstances should be viewed as a considered decree or a stipulated judgment for custody. In considering the policy concerns expressed above which underlie the Bergeron rule, we find the default judgment to be much less than a considered decree contemplated by the jurisprudential rule. The children's mode of living was never a sole custody arrangement after the default judgment because the parties agreed to something entirely different. The court's resources and the consideration given to the default judgment are not the same as with a considered decree. The vexatious process for a considered decree was not visited upon the children, the litigants and the court through this default judgment. Accordingly, we find the trial court's rejection of Bergeron under the facts of this case appropriate.

II.
In this case, Patricia's burden consisted of proving a material change of circumstances since entry of the original custody decree and that the proposed modification was in the best interest of the children. White v. Kimrey, 37,408 (La.App.2d Cir.5/14/03), 847 So.2d 157, writ not considered, 03-1943 (La.8/1/03), 849 So.2d 534; Touchet v. Touchet, 36,881 (La.App.2d Cir.1/29/03), 836 So.2d 1149. La. C.C. art. 134 provides that the court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Hoskins v. Hoskins, 36,031 (La.App.2d Cir.4/5/02), 814 So.2d 773. Moreover, the factors are not exclusive, but are provided as a guide to the *475 court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App.2d Cir.8/31/00), 768 So.2d 219.
Underlying the trial court's great discretion in child custody cases is its opportunity to better evaluate the credibility of witnesses. Accordingly, the trial court's determination of custody issues is afforded great weight and will not be disturbed on appeal absent an abuse of discretion. Hoskins v. Hoskins, supra.
In its analysis of the twelve factors for the best interest of the child determination under Article 134, the trial court found that many of the factors were basically neutral in that they did not militate in favor of either parent one way or the other. Regarding the parents' capacity to educate the children, Patricia's lack of a high school diploma was not a significant issue to the trial court because it could be overcome. Patricia's education affected her family's financial capacity. However, the trial court found that even though the financial condition of Patricia's household was constrained, Tracy's payment of child support would alleviate this problem and increase Patricia's ability to meet the children's physical needs.
The finding of the trial court on the fourth factor weighed heavily in Patricia's favor, concluding that Patricia "has been the de facto custodial parent" for at least two years and possibly as many as four years. The court was "quite hesitant to change that circumstance." According to the ruling, the fifth factor, permanence as family unit, militated against Tracy as he had remarried in late 2004 and his present spouse also worked full-time. The eighth factor, community history, weighed for Patricia since the children would continue at the same school if Patricia were awarded the domiciliary custody. The trial court found that the tenth factor, the willingness of the parties to foster a relationship between the children and the other party, militated in favor of Tracy. Nevertheless, it was satisfied that Patricia would also reciprocate. Finally, factor twelve weighed in favor of Patricia because the court again found she had been the primary custodial parent during the preceding years. The court stated:
She is the one that's been involved primarily in their school activities. She's the one that has been caring for them primarily on a day-to-day basis, and she is the one that, from my observation and my hearing, is intimately familiar with each of these children and what their emotional needs are and what their nurturing needs are, and I do conclude that she has been the primary parent that has been involved in the care and the nurture of these children.
In disputing the trial court's ruling, Tracy cites certain moral and credibility issues concerning Patricia and her educational and financial deficiencies which allegedly were improperly discounted by the court. He also asserts that the trial court was required to grant his motion for psychological evaluations of the parties and the children. Initially, however, before specifically addressing Tracy's arguments, we note that none of these contentions are seriously argued as a basis of support for sole custody in favor of Tracy. Apart from his argument under Bergeron which has now been decided against him, a joint custody ruling, which is mandated by Civil Code Article 132[1] absent clear and convincing *476 evidence for sole custody, will control regardless of which of these parties is designated the domiciliary parent. Significantly in this case, as a result of the trial court's order for the joint custody implementation plan, Tracy is entitled to specified custody/visitation relations with the children on approximately 170 days during the year. He and Patricia, who live in and around the Ruston area, are expected to be closely involved in their children's lives regardless of the contentions which Tracy raises in argument to this court. Those contentions might alter the ruling for the domiciliary parent and the designation of the parent who will have the primary custody during the school year, but would not affect joint custody.
In that context and given this state's grant of much discretion to the trial court to weigh the many factors for the best interests of children, we do not find merit in Tracy's arguments. Tracy contends that Patricia was untruthful in her testimony regarding a tattoo in the groin area of her body. Citing evidence regarding the children's touching of Patricia's breasts after her breast augmentation surgery and the nudity of family members at her residence, Tracy claims immoral behavior. These issues go to credibility which the trial court could weigh not only from the cited incidents but from Patricia's overall testimony. The trial court did caution Patricia on these matters as follows:
There has been a good bit of testimony concerning issues that are related to moral fitness of Ms. McCready. There's been issues, testimony concerning tattoos, testimony concerning breast augmentation, testimony concerning nudeness at the home, testimony concerning her relationship with her present husband prior to the dissolution of her marriage with Mr. McCready. Those are issues which, in my view, particularly with respect to the nudeness, is inappropriate. I don't think that it rises to the level that it would be something that would justify her not receiving the custody. There is no testimony that I have seen that reflects that this clearly affects the welfare of the children.
Regarding Patricia's lack of education and her family's financial difficulties, the trial court emphasized Patricia's diligence in assisting the children with their school work. The evidence shows that Patricia's new husband, Chris, is attending college for employment in a medical-related field. Because of this and Patricia's lack of education, the family finances are strained. Nevertheless, the court could conclude that the difficulties are temporary in nature, and that Patricia's actions revealed the importance she presently places on education.
Finally, the trial court refused to order any psychological evaluations of the parties and the children. Tracy's insistence that this was urgently needed is belied by the shared custody which he voluntarily allowed in the years leading up to the present litigation. The overall testimony suggests no need for such review. Tracy cites no statute requiring the trial court to mandate such testing, and we find no abuse of discretion in the trial court's decision.
Accordingly, the trial court's well-considered reasons and lengthy ruling weighing the factors of Article 134 are entitled to much discretion for the measurement of the best interests of these children. Tracy's argument in brief that "he should not be punished" for having allowed Patricia an equal sharing of custody in the past misses altogether the essence of the children's best interest test. Just as his allowance *477 for the prior sharing was for the children's best interest, the trial court's ruling maintains and promotes their welfare based upon its weighing of the evidence. The ruling is affirmed.

III.
Patricia filed an answer to the appeal in which she contests the trial court's fixing of child support at $300 per month and certain visitation issues in the joint custody implementation plan. From our review of the record, there was very little evidence submitted concerning the incomes of the parties. The dispute centered instead on the custody award. While we agree with Patricia that the $300 monthly award was not precisely calculated under the support guidelines, she did not attempt to press that issue regarding its calculation at trial or through a motion for new trial. Her evidence also does not warrant a change in the trial court's determination of the award.
Regarding the written joint custody implementation plan and its variance with the trial court's oral reasons concerning custody, as detailed above, we find no merit in Patricia's attempt by her answer on appeal for any modification of the details of that arrangement. In fact, at oral argument, Patricia's counsel indicated that the written implementation plan was confected with the parties' consent. Accordingly, the appeal requests made by Patricia's answer are denied.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of the appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] La. C.C. art. 132 provides, in pertinent part: In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.