STEWART, J.
 

 |) Plaintiff-Appellant, Brian Watson, is appealing a final judgment of custody rendered in favor of Defendant-Appellee, Pamela Watson. For the reasons discussed below, we affirm the lower court’s judgment.
 

 FACTS
 

 Pamela and Brian Watson were married on November 9, 2002. The couple has three children: S.W., who was born on March -2, 2001; K.W., who was born on April 21, 2003, and; A.W., who was born
 
 *220
 
 on April 29, 2004. A.W. is a special needs child who suffers from cerebral palsy.
 

 On August 5, 2006, Brian moved out of the matrimonial domicile. On October 31, 2006, Pamela filed a petition for divorce, in which she requested that joint custody of the children be awarded and that she be named the domiciliary parent. The judgment for divorce was granted on September 19, 2007.
 

 When the parties separated initially, Pamela primarily cared for the children. For reasons not clearly explained in the record, Brian assumed care of the children in April 2008, until the parties returned to court on August 19, 2008. On that day, the trial court entered an interim order, which provided limited visitation to Pamela until it imposed a schedule of sharing of the physical care of the children.
 

 On July 9, 2009, the trial court signed a final judgment of custody, which ordered joint and shared custody of the children on a week-to-week basis. Pamela was named the domiciliary parent. Brian filed a motion for a new trial, which was subsequently denied. He now appeals, asserting four assignments of error.
 

 | ¡.LAW AND DISCUSSION
 

 La. C.C. art. 134
 

 In the first assignment of error, Brian Watson asserts that the trial court erred by interpreting the word “previously,” which is used in La. C.C. art. 134(12), to mean the time frame in which he and Pamela were still living together, and not the time period after the parties physically separated before the trial. Brian argues that the court’s interpretation of “previously” failed to consider his actions, as well as Pamela’s, since they physically separated. He asserts that the court should have defined the word “previously” broadly, to include the care, or the lack thereof, up to the very last day of trial. Had the court done so, he believes that the court would realize that the evidence would reveal that he had assumed the role of the “primary nurturing parent.”
 

 Similarly, Brian asserts in the second assignment of error that the trial court erroneously applied the elements of La. C.C. art. 134 to accomplish a joint shared custody regime and erred in designating Pamela as the primary domiciliary parent. Since Brian is asserting in assignments of error one and two that the trial court erroneously interpreted and applied the factors set forth in La. C.C. art. 134, we will discuss these interrelated assignments together.
 

 It is well settled in our statutory and jurisprudential law that the paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131;
 
 Semmes v. Semmes,
 
 45,006 (La.App. 2 Cir. 12/16/09), 27 So.3d 1024;
 
 Shivers v. Shivers,
 
 44,596 (La. App. 2 Cir. 7/1/09), 16 So.3d 500. Custody determinations are made on a case-by-case basis.
 
 Robert v. Robert,
 
 44-528 (La. App. 2 Cir. 8/19/09), 17 So.3d 1050. The trial court has vast discretion in deciding the matters of child custody and visitation.
 
 Semmes, supra.
 
 An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion.
 
 Pender v. Pender,
 
 38, 649 (La.App. 2 Cir. 5/12/04, 890 So.2d 1);
 
 Semmes, supra.
 

 If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown
 
 *221
 
 by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. La. C.C. art. 132.
 

 To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. La. R.S. 9:335(A)(2)(b). Yet, when the trial court finds that a decree of joint custody is in the best interest of the child, the statute does not necessarily require an equal sharing of physical custody.
 
 Semmes, supra; Stephenson, supra.
 

 In determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case.
 
 Hoskins v. Hoskins,
 
 36,031 (La.App. 2 Cir. 4/5/02), 814 So.2d 773;
 
 Cooper v. Cooper,
 
 579 So.2d 1159 (La.App. 2 Cir.1991). La. |4C.C. art. 134 lists some of the relevant factors to be considered in determining the best interests of the child.
 

 The trial court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors.
 
 Id,.; Robert, supra; Bergeron v. Bergeron,
 
 44,210 (La. App. 2 Cir. 3/18/09), 6 So.3d 948. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the court.
 
 Semmes, supra; Robert, supra.
 
 The trial court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented.
 
 Stephenson v. Stephenson,
 
 37,323 (La.App. 2 Cir. 5/14/03), 847 So.2d 175.
 

 In the instant case, the record reveals that the trial court judge thoroughly evaluated each of the factors listed in La. C.C. art. 134.
 

 (1) The love, affection, and other emotional ties between each party and the child.
 

 The trial judge stated that Brian and Pamela provided love and affection for their three children. She specifically recognized Pamela’s act of paying special attention to A.W., so that she can ensure her a life that is as normal as possible. She also noted Brian’s increasing involvement in A.W.’s therapy. For these reasons, the trial court determined that this factor did not favor either party.
 

 (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
 

 IsAside from Pamela’s lifestyle and Brian’s attempts to “get back at Pamela,” the trial judge believed that the parties had the capacity and disposition to give the children love. However, each party had failed to provide spiritual guidance to the children. For these reasons, the trial judgment determined that this factor did not favor either party.
 

 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
 

 The trial judge commended Pamela’s attempt to provide for her children. During the marriage, Pamela was a stay-at-home mom. After the couple separated in 2006, Pamela began working for her father. Pamela testified that she began receiving child support from Brian in November 2006. From February 2008 to the present
 
 *222
 
 date, Pamela worked at several places, including Crawdaddy’s Restaurant, Eldorado Casino, and the Break-N-Run Bar. She is currently pursuing a nursing degree.
 

 As mentioned in the previous paragraph, Brian provided child support for his children. He obtained some technical training and used those skills to maintain a steady job.
 

 The trial judge recognized that both Pamela and Brian have exhibited behavior that indicates that they are hard workers. It is clear that the parties collectively have supplied their children’s every need. For these reasons, she found that this factor did not favor either party.
 

 (k) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
 

 During the trial, Pamela and Brian agreed on a custody arrangement where they rotated on a week-to-week basis. At the conclusion of the trial, | (ithe trial judge noted that since the current custody arrangement commenced, Brian and Pamela have been able to provide a stable environment for the children. She also recognized the significant reduction in conflict between the parties regarding custody. Therefore, this factor did not favor either party.
 

 (5)The permanence, as a family unit, of the existing or proposed custodial home or homes.
 

 At the time of the trial, neither Brian or Pamela had a permanent home. Brian was living with his mother, while Pamela lived in a two-bedroom mobile home. Pamela testified that when she had custody of the children, she would stay with them at her dad’s house. For these reasons, the trial judge determined that this factor did not favor either party.
 

 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
 

 The trial judge determined that Pamela’s moral fitness was okay, but encouraged her not to have “toxic” people around her children. The trial judge also discussed Brian’s pornography problem and encouraged him to seek professional help for it, since it could prevent him from being a good father.
 

 (7) The mental and physical health of each party.
 

 Brian and Pamela are both physically healthy, but the trial judge again expressed her concern of Brian’s mental health due to his pornography problem and encouraged him to get help. The trial judge ultimately determined that this factor did not favor either party, but did not express any |7concern over either party’s mental or physical health with regard to their children.
 

 (8) The home, school, and community history of the child.
 

 The trial judge noted that Karen Lynn Speaks Rother, who is the school counselor at Keithville Elementary, testified that the children were doing well in school and that S.W.’s behavior was improving.
 

 (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
 

 The children did not express a preference. However, the trial judge noted that S.W., the oldest child who was approximately eight years old at the time of the trial, loved both parents and wanted to be with both of the parents.
 

 
 *223
 

 (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
 

 The trial judge noted that initially the parties’ tumultuous relationship negatively impacted the children. Fortunately, the parties are now able to maintain a relationship, albeit with minimum contact, so they can work together for the benefit of their children. Nevertheless, the trial judge determined that this factor did not favor either party.
 

 (11) The distance between the respective residences of the parties.
 

 Since both parties live in Caddo Parish, the trial judge determined that this factor is inapplicable.
 

 (12) The responsibility for the care and rearing of the child previously exercised by the parties.
 

 The trial judge determined that this factor favored Pamela. During the marriage, Pamela was a stay-at-home mom who primarily cared for the |schildren. As stated in the facts section, when the parties separated, Pamela continued to primarily care for three children, a five-year-old, a three-year-old, and a special needs two-year-old. She continued to primarily care for the children from August 2006 to April 2008. As stated in the facts section, the parties assumed a court-ordered joint custody agreement on July 9, 2009.
 

 Having reviewed the entirety of the record, we cannot agree with Brian’s contentions that the trial court erroneously applied the elements of La. C.C. art. 184 to accomplish a joint shared custody regime and in designating Pamela as the primary domiciliary parent. After analyzing the factors enumerated in La. C.C. art. 134, the trial judge determined that the majority of the factors did not weigh in favor of either party. In fact, La. C.C. art. 134(12) is the only factor that weighed in favor of Pamela, while no factor weighed in favor of Brian. It was well within the court’s discretion to give more weight to this factor in view of the evidence presented. Additionally, Brian and Pamela couldn’t agree on a custody arrangement pursuant to La. C.C. art. 132. Based on the facts and evidence presented, we find that trial judge did not err in applying the elements of La. C.C. art. 134 to accomplish a joint shared custody regime and in designating Pamela as the primary domiciliary parent. Brian’s second assignment of error is mer-itless.
 

 Brian asserts in his first assignment of error that had the trial court interpreted La. C.C. art. 134(12) to include the recent past, then the court would have named him domiciliary parent. We disagree. The trial judge considered Brian’s increased involvement in his children’s lives from April 2008 to the present date when discussing this factor. Even so, the record | indicates that Pamela assumed more responsibility in caring for and rearing the children than Brian did. Brian’s act of primarily caring for the children April to August 2008 is insufficient evidence to name him domiciliary parent. Brian’s first assignment of error is meritless.
 

 Interpretation of the Facts and Testimony Presented at Trial
 

 In the third assignment of error, Brian contends that the trial court misapplied the facts presented at trial. Similarly, in the fourth and final assignment of error, Brian asserts that the trial court erroneously interpreted and applied the testimony adduced and the facts placed into evidence regarding the best interest of the children.
 

 As stated above, the trial court has vast discretion in deciding the matters of child
 
 *224
 
 custody and visitation. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses.
 
 Slaughter v. Slaughter,
 
 44,056 (La.App. 2 Cir. 12/30/2008), 1 So.3d 788. Therefore, the trial court’s determination will not be disturbed on appeal, absent a clear showing of the abuse of discretion.
 
 Bergeron v. Bergeron, supra.
 
 As long as the trial court’s factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not reverse even though convinced it would have weighed the evidence differently if acting as the trier of fact.
 
 Id.
 

 Brian urges that the evidence and overwhelming testimony provide that he is currently the better nurturer for the children. Brian also discusses how Pamela’s lifestyle shows the lack of care and concern that she has for their children.
 

 |inWhen the trial judge imposed the current custody arrangement, she considered the testimony of Brian and Pamela and the people who knew them. The record does not show that Brian is a better nurturer for the children. Rather, it shows Brian’s increased involvement in the children’s lives. Brian now participates in A.W.’s therapy sessions more frequently and has had conferences with the children’s teachers at school.
 

 The record does not show Pamela’s lack of care and concern for the children as Brian erroneously suggests. To the contrary, the record shows that Pamela primarily transported A.W. to her therapy sessions and often followed up with the children’s teachers at school. Pamela testified that she prepared snacks for A.W.’s class when requested, attending “Muffins for Mom” and even “Donuts for Dad” at the children’s school when Brian was unable to attend. Karen Lynn Speaks Rot-hell, the school counselor for all three children, testified that the children were more stable and are well adjusted to Pamela and Brian sharing custody.
 

 After reviewing the record in its entirety, we find that the trial judge conducted a proper analysis of the evidence and testimony presented before determining that a joint custody arrangement is appropriate. Assignments of error three and four are without merit.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the trial court’s judgment. Costs are assessed to Appellant Brian Watson.
 

 AFFIRMED.