GASKINS, J.
|,In this matter involving the custody of two young boys, the father appeals, contending that the trial court placed too much emphasis upon his alcohol issues and granted him too little custody time after designating the mother as the domiciliary parent under a joint custody plan. We affirm the trial court judgment.
FACTS
The parties, Katherine Ella Cathcart Gaydon and Phillip Lloyd Gaydon, were married in May 2004. In July 2007, Ms. Gaydon adopted her husband’s son from another relationship, who was born in December 2001. They also had a biological son, who was born in October 2004. The parties separated in July 2009.
In August 2009, the mother filed suit seeking a divorce and sole custody of the children. She alleged that the father had substance abuse problems and a gambling addiction. She also asserted that he had been physically abusive to her, been fired from his job as a private investigator for stealing from his employer, and committed acts of adultery. She requested that the father be granted supervised and restricted visitation contingent upon completion of programs for his addictions and that no overnight visitation be granted.
The father answered pro se, contending that he had obtained counseling and was no longer abusing alcohol or drugs. However, he accused the mother of being addicted to a prescription drug, i.e., Ambien. He also claimed that she too gambled and that she spent excessive amounts of money on cosmetic procedures. He denied physically abusing the mother |2but asserted that she physically and emotionally abused him. As to the mother’s request that the father have only supervised visits, the father claimed that since filing for divorce, she had allowed unsupervised visits without incident.
In October 2009, the father — now represented by counsel — filed a rule to establish custody in which he sought to either be named domiciliary parent or be awarded equal shared custody of the children. He cited the “extreme close proximity” between the parents’ residences and the resulting ease in exchanging the children as a factor in support of his request.
*451 At a hearing on October 22 and 23, 2009, testimony was given by the parties and the father’s former employer, who testified that the father had stolen almost $20,000 from his business. In his testimony, the 26-year-old father characterized what he had done as “moonlighting.” When the father was confronted with his own handwritten admissions in which he stated— among other things — that he drank on the job, padded his paychecks, and had taken money from his employer, he asserted that he did not recall writing them because he was “in withdrawal” at the time they were written. While he also did not recall making the statement that his wife could not trust him, he admitted that statement was true.
The father testified that he worked for the private investigation agency for five years. He admitted that he was drinking too much toward the end of his employment there. He acknowledged that he had been involved in multiple car accidents, one of which involved drinking and driving. He was arrested for DWI, but was acquitted. On one occasion, he ^received a speeding ticket when the boys were in the car with him. In 2008, he underwent outpatient treatment for his dependence on alcohol. However, he indicated that he has not refrained from drinking.
The father testified that he is currently on medications for anxiety and depression and that on his most recent birthday (which was about two months before the hearing), he had mixed them with alcohol. While he initially said he did not recall placing an inappropriate phone call to the mother while under the influence of this combination, he then admitted that he did remember calling her. He conceded that his wife was a “great” mother. According to the father, he had been at his present job selling phones at Verizon for about 20 months. He asserted that he had the ability to negotiate his schedule if he was given split custody of the children.
The 26-year-old mother testified that even though she adopted the older child, she loved the boys equally. She stated that she had helped care for the adopted child since he was about a year old. While stating that the father’s apartment was suitable and that she felt comfortable leaving the children there, she expressed reservations about an equal physical sharing of custody for several reasons. Among them was her concern that the arrangement would be too disruptive for the boys during the school year; however, she was agreeable to alternating weeks of custody during summer vacation. She did voice fears about the father’s stability, stating that since their separation he had begun “drinking again ... and partying again.” She was also especially concerned by his actions in reestablishing contact with the older child’s biological mother, who worked as a stripper. According to |4the mother’s testimony, this woman was a drug addict and they had worked hard to remove her from their lives.
The evidence at the hearing revealed that the mother and the children still lived in the house that had been the family home since 2004 and that each child had his own room there. The father lived in an apartment across the street; at this residence, the boys share a bedroom with bunk beds. The mother testified that she attends a Methodist church with the children; the father stated that he does not attend church. Both parents testified that the older boy is an excellent student making good grades; the younger child attends a daycare run by a Baptist church. While the father’s job at Verizon has frequently required him to work on the weekends, the mother’s payroll job at a company involved weekdays only.
*452 At the conclusion of the hearing, the trial court awarded joint custody of the children with the mother being designated as the domiciliary parent. The father was granted visitation every other week from Thursday after school through Sunday at 6:00 p.m. Holidays and summer vacations were ordered to be shared equally; the court allowed the parents to alternate weeks of custody during the summer. Child support and spousal support were also awarded.
In oral reasons for judgment, the trial court stated that the evidence showed that the father had “an on-again-off-again alcohol problem.” It also referred to “some immature, selfish decisions” the father had made at work that caused him problems. The court mentioned the father’s “history of instability and questionable decisions,” which included his excessive ^gambling losses. However, the court also observed that the father had taken steps to address his problems and shown increased maturity. As to the mother, the court found that she was “impressive” when she testified and the more stable of the two.
A judgment reflecting the trial court’s ruling was signed on November 20, 2009.
The father appeals.
SPLIT CUSTODY

Law

The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 1997-0541 (La.2/6/98), 708 So.2d 731; Semmes v. Semmes, 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134. The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Semmes, supra. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Semmes, supra.
La. R.S. 9:335(A)(2)(b) provides that to the extent feasible and in the best interest of the child, physical custody of the child should be shared equally. Yet, when the trial court finds that a decree of joint custody is in|fithe best interest of the child, the statute does not necessarily require an equal sharing of physical custody. Semmes, supra.
Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Pender v. Pender, 38,649 (La.App.2d Cir.5/12/04), 890 So.2d 1; Semmes, supra.
Continuity and stability of environment are important factors to consider in determining what is in the child’s best interest. Pender, supra.
The trial court has vast discretion in deciding matters of child custody and visitation. Slaughter v. Slaughter, 44,056 (La.App.2d Cir.12/30/08), 1 So.3d 788; Semmes, supra. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses. Slaughter, supra; Semmes, supra.
Generally, the determination by the trial court regarding child custody is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion. Pender, supra. An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion. Pender, supra.

*453
Discussion

The father argues that the trial court was manifestly erroneous in not awarding an equal sharing of the children under La. R.S. 9:335 because he lives across the street from the mother. He also contends that the trial court erred in not considering all of the factors listed in La. C.C. art. 134 and that it placed too much emphasis on his alcohol problems when there was no evidence that his “alleged” alcoholism had affected the children. The father 17complains that the trial court did not properly consider the “particularly special bond” between him and the older son. This child was born out of wedlock while the father was in high school; he was adopted by the mother more than two years before the custody trial.
In her brief, the mother emphasizes the evidence of the father’s alcoholism, thefts from his employer, and gambling. She also stresses that she had been raising the older child since he was only a year old. She contends that the father’s proposed seven days on/seven days off custody split would be too disruptive for the children. The mother argues that the trial court properly considered all factors and crafted a custody plan which was in the best interest of the children.
We note at the outset that the father requests de novo review under Evans v. Lungrin, supra, on the basis of legal error by the trial court in not applying La. R.S. 9:335 to award equal physical custody of the children after determining that joint custody was appropriate. He accuses the trial judge of “personal bias” against shared custody. A review of the record demonstrates that the father’s accusations are unfounded. While the trial judge expressed some reservations about the implementation of 50/50 shared custody because of problems he had encountered with it in other cases, he did in fact allow the parties alternating weeks during the summer. We find no reason to invoke the de novo review standard set forward in Evans v. Lungrin, supra.
Our review of the record reveals no manifest error in the trial court’s decision to make the mother the domiciliary parent under a joint custody |8plan giving the father reasonable visitation, as opposed to implementing a plan which would mandate strict equal sharing of custody between the parents. There were several issues of concern pertaining to the father and his stability which led to the trial court’s decision in formulating this custody plan for the parties’ children. As the trial judge correctly noted, the evidence establishes that the father has a substance abuse addiction; he also appears to have had a gambling problem. While the father attempts to minimize the importance of the alcohol issue, the fact remains that his addictions have caused significant problems for this young family in the recent past.[1] While the father does appear to have made some strides toward improvement, the specter of reoccurrence still remains. In fact, the father’s actions in mixing medication and alcohol — which led to an inappropriate telephone call to the mother — just a few months before the custody hearing demonstrate that his judgment is still lacking.
However, the trial court was willing to recognize the father’s recent progress by not imposing supervision or restrictions upon his visitation with the children and in allowing him to having alternating equal weeks of custody during the summer when school (with its attendant pressures and *454 demands) would not be an issue. The trial court obviously believed that the mother was better able to provide the children with the stability they require during the school year and that it was in their best interest for her to be ^designated their domiciliary parent. Upon this record, we find no manifest error as to this determination.
As to the older son, the father asserts that the trial court erred in failing to consider that he has a “special” bond with the boy because he is the child’s biological parent (whereas the mother is only an adoptive parent) and the father has participated in his care since birth. However, the evidence shows that the mother entered this child’s life and assumed the maternal role when he was very young. Now eight years old, he has been a recipient of the mother’s care since he was less than two years old, and he was five years old when she adopted him. The mother testified that she loves and treats the boys equally. Even the father conceded in his testimony that the mother loves the children equally. We find that the trial court did not err in treating the parties as having equal status as parents to both children.
Under the facts of the instant ease, the trial court concluded that an equal, alternating, split physical custody arrangement was not in the best interest of the children during the school year. We find no abuse of the trial court’s great discretion in so deciding.
CONCLUSION
The trial court judgment is affirmed. Costs of this appeal are assessed against the appellant, Phillip Lloyd Gaydon.
AFFIRMED.

. We observe that the father emphatically asserts that he is entitled to shared custody because of his actions as a teenager in caring for the older child during infancy, while ignoring the alcohol problems which have plagued him as an adult.