NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-549

MELISSA ALSTON PORTER

VERSUS

JEFF D. PORTER

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 238,690
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED.

J. Ogden Middleton, II, P.L.C.
1744 White Street
Alexandria, LA 71301
(318) 443-4377
COUNSEL FOR DEFENDANT/APPELLANT:
    Jeff D. Porter

**Michael H. Davis**
**P. O. Box 12180**
**Alexandria, LA 71315-2180**
**(318) 445-3621**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Melissa A. Porter**

**PETERS, J.**

Jeff D. Porter ("Jeff") appeals a trial court judgment denying his request for a modification of a custody judgment relating to the children born to the marriage of him and his former wife, Melissa Alston Porter ("Melissa"). For the following reasons, we affirm the trial court judgment.

## Discussion of the Record

Jeff and Melissa entered into a covenant marriage on April 21, 2001, in Rapides Parish, Louisiana, and two children were born of that marriage: Madison Brook Porter, born October 22, 2001; and John Scott Porter, born August 10, 2006. The parties physically separated on May 21, 2010, and on June 9, 2010, Melissa filed a petition for separation from bed and board, which included a request for custody of the two minor children. Jeff responded to his wife's filing with, among other pleadings, a request for shared custody of the minor children, with him being designated as the domiciliary parent.

The custody issue was not amicably resolved, and following a two-day trial,[1] the trial court issued written reasons for judgment wherein it determined that the best interests of the children required that joint custody be awarded to their parents with Melissa being designated as the domiciliary parent. The trial court executed a judgment to that effect on February 1, 2011. The judgment further set forth Jeff's specific visitation rights to the children and awarded Melissa the use and occupancy of the family residence pending final partition of the community property regime.[2] This court rejected Jeff's appeal of this judgment. *Porter v. Porter*, 11-460 (La.App. 3 Cir. 10/5/11), 74 So.3d 305.

---

[1] Trial on the custody issue began on August 16, 2010, and ultimately concluded on September 22, 2010.

[2] The issue of child support was considered at a separate hearing held March 30, 2011. The judgment arising from that hearing set forth the parameters for the payment of child support;

The judgment of divorce executed by the trial court on July 11, 2011, is silent as to custody and support issues, and the next pleading addressing that issue is Jeff's October 24, 2011 pleading, wherein he initially sought the modification of the existing visitation schedule.[3] The response to this filing by Melissa and subsequent rulings of the trial court ultimately resulted in Jeff filing an October 4, 2012 supplemental pleading, wherein he expanded his request for relief by asking the trial court to designate him as the domiciliary parent and to order that Melissa undergo a mental health evaluation. In attempting to satisfy his burden pursuant to *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), Jeff listed a number of acts or omissions on the part of Melissa, which he asserted reflected instances of poor decision making sufficient to warrant modification of the custodial arrangement.

The trial court heard evidence on Jeff's rule to show cause at a two-day trial held on April 24 and 26, 2013, and after completion of the evidentiary phase, the trial court took the matter under advisement. On August 14, 2013, the trial court issued written reasons for judgment rejecting Jeff's request for relief. The trial court signed a judgment corresponding to its written reasons for judgment on February 13, 2014, and thereafter, Jeff perfected this appeal. In his appeal, he asserts three assignments of error:

1. The trial court abused his discretion, manifestly erred and committed reversible factual and legal error by concluding that this appellant failed to prove a material change in facts since rendition of the 2011 considered decree.

2. The trial court abused his discretion, manifestly erred and committed reversible factual and legal error by concluding appellant failed to

for maintaining health insurance on the entire family and the payment of the remaining medical bills; establishing the occupancy of the family home and the payment of the mortgage note on the family home; and other miscellaneous matters associated with the community property.

[3] While the caption and body of the pleading suggests that Jeff also sought court-ordered psychological evaluations of unidentified individuals, the prayer requests only that Melissa show cause "why the current judgment should not be modified allowing [Jeff] with additional visitation."

2

comply with either of the two prongs set forth in *Bergeron v. Bergeron* standard.

3. The trial court abused his discretion, manifestly erred and committed reversible factual and legal error by failing to order an evaluation of the parents in this case pursuant to La. R.S. 9:331.

## OPINION

A party seeking to change custody rendered in a considered decree must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986):

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child

Furthermore, the trial court has vast discretion in deciding matters of child custody and visitation; this discretion is based on the trial court's opportunity to better evaluate the credibility of the witnesses. *Gaydon v. Gaydon*, 45,446 (La.App. 2 Cir. 5/12/10), 36 So.3d 449. Generally, the determination by the trial court regarding child custody is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion. *Id.* An appellate court should be reluctant to interfere with child custody plans implemented by the trial court in the exercise of its discretion. *Id.*

Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart v. State Through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). The issue which the reviewing court must resolve is not whether the trier of fact was right or wrong, but

3

whether the factfinder's conclusion was a reasonable one. *Id.* Even if the appellate court would have decided differently had it been the original trier of fact, the trial court's judgment should be affirmed unless it is clearly wrong or manifestly erroneous. *Duhon v. Duhon*, 03-898 (La.App. 3 Cir. 2/18/04), 867 So. 2d 830, *writ denied,* 04-1033 (La. 6/18/04), 876 So.2d 811.

With regard to the authority of the domiciliary parent to make decisions affecting the children in his or her custody, La.R.S. 9:335(B)(3) provides:

> The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon a motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

In this case, the judgment at issue did not provide anything different from the mandate of this statute.

Jeff's first two assignments of error both relate to the sufficiency of the evidence before the trial court. With regard to his burden of proof and the sufficiency of the evidence presented, the trial court's written reasons for judgment reads, in pertinent part, as follows:

> **Modification of Custody:**
>
> The Court issued a considered decree of custody in December of 2010. As such, in order to modify custody, Mr. Porter must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody. *Mulkey v. Mulkey*. 2012-2709 (La. 5/7/13). Further, Mr. Porter must also meet the burden of proof set forth in *Bergeron:*
>
> > "When a trial court has made a considered decree of permanent custody, the party seeking to modify the decree bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that any harm likely to be caused by a change of environment is

substantially outweighed by the advantages of the child."
*Bergeron v. Bergeron,* 492 So.2d 1193 (La.1986).

Mr. Porter, in his 2012 Amended and Supplemental Rule to Modify Custody, alleged five instances of poor decision making as grounds for modification: (1) Ms. Porter, although allowed to occupy and use the family home, did not live in home, but rather moved in with her parents, (2) Ms. Porter did not allow the two children to visit their paternal grandmother when she was in the hospital, (3) Ms. Porter did not allow visitation with father and paternal grandparents on Halloween of 2011, (4) Ms. Porter changed the school and day care of the two children, and (5) Ms. Porter changed the church the children had been attending and allowed the older child to become baptized in new church.

The Court will discuss in detail these five allegations:

### (1) Family Home

The Court awarded Ms. Porter use and occupancy of the former family home pursuant to La. R.S. 9374. However, Ms. Porter never took possession of the former family home. Mr. Porter contends that this is one instance that Ms. Porter made a poor decision which negatively affected the children. He argues that by not taking possession and allowing children to remain in home, which they had lived in their entire life, was not in the best interest of the children.

### (2) Grandmother Hospital Visit:

Mr. Porter next contends that by not allowing the children to visit with their injured grandmother in the hospital such decision was not good judgment on Ms. Porter's part and not in children's best interest. In March 2011, Mr. Porter's mother was injured in a car accident, where she remained in the hospital for a number of days. Mr. Porter alleges that Ms. Porter restricted his access to the children and did not allow him to take the children but one time, for a period of 45 minutes, to visit with their grandmother. Ms. Porter testified that she did not remember only allowing him one time or giving him a time restraint. Ms. Porter's mother also testified as to the grandmother visitation, testifying that she remembered Mr. Porter picking children up from daycare one day and dropping off before bedtime and another time where Mr. Porter picked children up and dropped them off at a movie.

### (3) Halloween 2011

Mr. Porter also alleges that Ms. Porter did not allow the children to visit with him and his parents for Halloween 2011, as they had previously done in the past. He argues again that this is poor judgment on Ms. Porter's part and that not in children's best interest. Mr. Porter testified that he was denied access to the children on Halloween. Ms. Porter testified that she did indeed deny his request to take the children out for Halloween, because she had already made plans to attend a church function and because it was a school night and children had homework. She further testified that she allowed Mr. Porter to take the children for Halloween in 2012.

### (4) School and Day Care Change:

Mr. Porter further alleges Ms. Porter exercised poor judgment and did not act in children's best interest when she moved the children from Buckeye Elementary to Paradise Elementary. Mr. Porter argued that it was not in children's best interest to be moved from a school and day care facility they attended their whole life during the divorce and after. Ms. Porter argued that she did so after looking into the two schools, their extracurricular activities, and the proximity to her/Ms. Porter's employment.

Mr. Porter further argues these changes were made without his knowledge, consent or involvement.

### (5) Church Change and Baptism:

Mr. Porter finally alleges that Ms. Porter exercised poor judgment by changing the church the children attended and by further allowing the oldest child to become baptized at this new church. Again, Mr. Porter argues that Ms. Porter did not act in the children's best interest by having children attend a new church. Further, he argues that he was not consulted in the decision for the oldest child to become baptized at the new church. Ms. Porter argued that she changed churches because she no longer felt comfortable at Philadelphia Baptist Church after the separation. It was Mr. Porter's home church that she joined after marrying him. She also stated that she was not involved in older child's decision to become baptized, as that is a personal decision. Further, she stated she never wanted children to become disassociated with Philadelphia—as they still attend PBC, go to VBS, and still have friends there.

6

The Court is not convinced that a material change affecting the welfare of the children has occurred. Since the rendition of the considered decree in 2010, the children have moved into a new house with their mother, have changed schools, and begun attending a new church. While the court recognizes that these are indeed changes, this court does not believe these changes rise to the level of "materially affecting" the children's welfare. Some change is inevitable when parents divorce—one parent will move out of the family home and the other will stay. This is exactly what happened in this case—Mr. Porter remained in the family home and Ms. Porter moved out.

Dr. Alicia Pellegrin was retained by Mr. Porter as to her opinion on these instances. In her opinion, she testified that it would have been in the children's best interest to remain in the family home, to remain at Buckeye Elementary, and to have further better informed Mr. Porter in the decision of Madison becoming baptized at Journey Church, as she stated that when children go through divorce, it is best to maintain the status quo and to refrain from as much change as possible.

While the Court agrees with Dr. Pellegrin, after testimony from both sides as to the family home, it appears to the court that Ms. Porter taking possession of the family home may not have been feasible. Both sides did not want Ms. Porter to occupy the family home and it appears to the Court that both sides stalled as much as they could in Ms. Porter obtaining occupancy of the family home. The family home was a major source of contention between both parties in the initial custody hearing: this was Mr. Porter's separate property and where he kept his work equipment and Ms. Porter felt uncomfortable around Mr. Porter's family, who all lived nearby.

Also, while the children did change schools and church; it was testified that children still attend their first church—Philadelphia Baptist Church—while also attending their mother's new church—Journey Baptist Church. The children are still practicing their Protestant-Baptist faith, even though attending two churches.

Further, the children, since the change in school and daycare, have adjusted to their new surroundings. While Mr. Porter argued that the children do not have as many friends at their new school (Paradise Elementary) and that the youngest child had issues early on with shyness and hesitancy in making new friends, it appears from the testimony that the children have adjusted, and seem to like their new school. They also still continue to play and interact with their old classmates and friends from their old school.

The court considers these changes in light of the parents' recent divorce, while having some negative impact on the children, to not be materially affecting the children's welfare.

Further, even if this court did find that there was a material change; Mr. Porter has failed to meet his burden of showing that the present custody is so deleterious or that any change in custody would be advantageous to the children. While the court does have some concern with the decisions made by Ms. Porter as a whole, this Court is not of the opinion that these decisions, and their results, rise to level of *Bergeron.* All these decisions were made and based on Ms. Porter domiciliary parent and the authority given to her under La. R.S. 9:335. These decisions are not so deleterious that a modification of custody would or should be warranted.

Further, it does not appear to the court that these changes have negatively impacted the children to where court would find these changes are deleterious. A concern was brought to the attention of the court by Mr. Porter about the younger child's thumb-sucking, as Mr. Porter alleged it was brought about due to the change in school. However, both parents testified that the child is shy and that both were attempting to remedy this problem. It was also testified to that this problem had dissipated since beginning of school. The children are making good grades in school and are not behavior problems, neither at school or at home. While it is taking time to make new friends, this is not so uncommon with children changing schools. The Court finds that these changes are not as deleterious as Mr. Porter believes them to be.

While the court is also concerned that Ms. Porter may not be as forthcoming in her communication with Mr. Porter, as she is required to do under domiciliary parent statute, it is also very clear to the court that both parties have difficulty communicating with each other. Thus, this Court finds that Mr. Porter has failed to meet his burden.

While the court holds in high esteem both Dr. Pellegrin and Dr. Logan, neither of these psychologists have seen the children on more than one occasion. They both testified that they observed and met the children only one time and for a brief time. Their opinions of the children were based on casual, brief communication with the children.

Even further, Mr. Porter has not shown to this court clear and convincing evidence that any harm caused by a change in custody would be substantially outweighed by its advantages to the children, other than returning the children to Buckeye—which, Madison would not be attending anymore anyway and John Scott is only to begin first grade.

Thus, this Court finds that Mr. Porter has failed to meet his burden as required under Bergeron, to modify custody.

8

(Footnote omitted.)[4]

Jeff relies primarily on the testimony of Dr. Alicia Pellegrin[5] in support of his argument that he carried his burden of proof. Dr. Pellegrin testified that in her professional opinion, it is in the best interests of minor children to maintain the status quo and to refrain from as much change as possible when their parents are going through a divorce. Thus, she concluded, it would have been in the children's best interest for Melissa to remain in the family home, for the children to remain at Buckeye Elementary, and for Jeff to have been informed of Madison's decision to be baptized at Journey Church. The trial court addressed this issue in its reasons for judgment as well as the individual events relied upon by Jeff. We find no manifest error in the factual findings of the trial court with regard to the changes outlined by Jeff and the other factual events for which evidence was presented. Therefore, we find no merit in Jeff's first two assignments of error.

In his third and final assignment of error, Jeff asserts that the trial court erred in not ordering an evaluation of the parents pursuant to La.R.S. 9:331. In addressing this issue, the trial court stated the following in its written reasons for judgment:

**<u>Mental Evaluation</u>**:

Mr. Porter further urges this court to order a mental health evaluation of Ms. Porter based on the decisions. Louisiana Revised Statute 9:331 governs the authority of the court to order an evaluation of a party:

"The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health

---

[4] In one of the two footnotes to the reasons for judgment, the trial court noted that "Mr. Porter also alleged a sixth incident - inappropriate contact with a minor - however, the Court did not consider as it occurred prior to the 2010 judgment."

[5] Dr. Pellegrin is an Alexandria, Louisiana clinical psychologist, who testified on behalf of Jeff.

9

professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable."

The language of La. R. S. 9:311 is permissive and thus, it is within the discretion of the trial court to order such evaluations. *Gill v. Bennett*, 11-886 (La. App. 3d Cir. 12/7/11)[,] 82 So. 3d 383, 389.

The court, at this time, declines to order an evaluation of Ms. Porter, or the parties, as it does not believe enough "good cause" has been shown. While Dr. Pellegrin testified that she believed that an evaluation is warranted, when looking at all of the decisions made by Ms. Porter as a whole, Dr. Pellegrin has never met nor examined Ms. Porter. Further, Dr. Randy Logan, who has seen and met with Ms. Porter, testified that he did not think an evaluation was warranted as it appeared to him that there were no "credible indicators" for which an evaluation would be warranted. This Court would tend to agree with Dr. Logan—it does not appear to this court from the evidence or testimony that there is any weight to Mr. Porter's allegation that Ms. Porter is narcissistic or suffers from any other mental health ailment. Further, there is no need for an evaluation of the family as it further appears to the court that an evaluation of the family is [not] needed as there are also no "indicators" of distress or any other deleterious impacts exhibited by the children.

## Parenting Coordinator:

Since the filing for divorce in 2009, the parties have been in constant litigation. It is further noted by this Court that the parties, since the divorce, have had difficulty in communicating with each other regarding the children. Pursuant to La. R.S. 9:358.1, for good cause shown founded on the high conflict nature of this case, an on-going pattern of unnecessary litigation over the last three years, the difficulty in communicating about the cooperation in the care of the children, and collaboratively make parenting decisions, this court, on its own motion, orders a parenting coordinator to help facilitate communication between the parties and resolve parenting issues for a period of one year. The court further orders each party to pay one-half of the costs of the parenting coordinator. The court will give the parties fifteen days from the date of these written reasons to recommend to the court the name of a parenting coordinator that is within a reasonable distance of the parties.

Accordingly, this court hereby denies Mr. Porter's rule to modify custody on basis that he has failed to meet his burden under *Bergeron*, and further denies his request to order an evaluation of Ms. Porter. This Court further orders the appointment of a parenting coordinator to help facilitate communication and resolution to conflicts between the parties.

10

Again, Jeff relies primarily on the testimony of Dr. Pellegrin in support of his claim that mental health evaluations should have been ordered, and again, the trial court specifically addressed this issue in its reasons for judgment. While recognizing that Dr. Pellegrin was of the opinion that Melissa's pattern of decisions and behaviors suggested that a forensic evaluation was needed, the trial court noted that Dr. Randy Logan, an Alexandria, Louisiana clinical psychologist, reached an opposite conclusion after performing a psychological evaluation of Melissa. The trial court chose to accept the testimony of Dr. Logan over that of Dr. Pellegrin, and we find no manifest error in that determination. Thus, we find no abuse of discretion in the trial court's refusal to order an evaluation by a mental health professional pursuant to La.R.S. 9:331. It follows that we find no merit in this assignment of error.

## DISPOSITION

For the forgoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to Jeff D. Porter.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION
Uniform Rules—Courts of Appeal, Rule 2-16.3

11