| | | |
|---|---|---|
| **JENNIFER BUUCK** | * | **NO. 2023-CA-0790** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **SEAN NORWOOD** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-01381, DIVISION "K"
Honorable Bernadette D'Souza, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Rosemary Ledet)

**LOVE, C. J., CONCURS IN THE RESULT**


Jennifer Carter
de BLANC LAW FIRM
1615 Poydras Street, Suite 910
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT


Tracy G. Sheppard
TRACY GLORIOSO SHEPPARD, APLC
830 3rd Street, Suite 202
Gretna, LA 70053

      COUNSEL FOR DEFENDANT/APPELLEE


                                          **AFFIRMED**
                                       **February 16, 2024**

This is a contentious child-visitation case.[1] The parties, who were never married, had one child together. The mother is Jennifer Buuck; the father is Sean Norwood; and the child is S.N.[2] From the trial court's September 22, 2023 judgment granting Mr. Norwood's request to proceed with the final phase of a titrated visitation schedule and allowing him over-night visitation, Ms. Buuck appeals. For the reasons that follow, we affirm.

*Factual and procedural background*

Ms. Buuck commenced this case six years ago by filing a petition for recognition of paternity, for custody of minor child, and for child support. The parties consented to paternity, and the minor child was filiated to Mr. Norwood.

---

[1] "Visitation" is the proper term for "parental access when there is sole custody, but not joint custody. With joint custody the proper term is physical custody or access." Robert C. Lowe, 1 LA. PRAC. DIVORCE, *Award of rights*, § 7:82 (2023); *see also Davis v. Davis*, 21-663, p. 5, n.1 (La. App. 3 Cir. 2/2/22), 333 So.3d 1252, 1255 (citing La. C.C. art. 136 and *Cedotal v. Cedotal*, 05-1524 (La. App. 1 Cir. 11/4/05), 927 So.2d 433)(observing that "when one parent is awarded sole legal custody, the other parent's time with the child is referred to as visitation"). Such is the case here. Ms. Buuck, based on a consent judgment, has sole custody; Mr. Norwood has visitation rights. The extent of his visitation rights is the issue on this appeal.

[2] The minor child—a girl—is now six-years old. To protect the minor child's identity, we refer to her by her initials. *See* Uniform Rules—Courts of Appeal, Rule 5-1 and 5-2.

Later that year, Ms. Buuck filed a petition for protection from abuse. To resolve that petition; Mr. Norwood consented to Ms. Buuck having sole custody and to the issuance of a permanent civil injunction, which included an exception for his visitation with S.N. Thereafter, Mr. Norwood filed a motion to modify custody. In response, the trial court appointed Dr. Kristen Luscher, a custody evaluator. After Dr. Luscher completed a custody evaluation, she issued a five-page recommended titrated visitation schedule for the parties, which included multiple phases.

In June 2021, the parties executed a consent judgment. In that judgment, the parties adopted Dr. Luscher's titrated visitation schedule as well as numerous other provisions (the "June 2021 Consent Judgment").[3] Thirteen months later, the parties returned to court. Following a hearing, the trial court found that Mr. Norwood successfully had completed Phases One and Two[4] and that he could proceed to Phase Three with certain modifications to Dr. Luscher's recommendations in the titrated visitation schedule (the "July 2022 Judgment").[5] The July 2022 Judgment provided as follows:

---

[3] The titrated visitation schedule actually included six phases, but the parties agreed to not do Phase Six. A copy of the titrated visitation schedule was attached to the Consent Judgment an exhibit.

[4] Phase One provided for Mr. Norwood to complete an intensive alcohol and substance abuse treatment program. Phase Two provided for Mr. Norwood to undergo random alcohol and drug testing at least three times per month and that he comply with certain maintenance treatment (such as AA attendance, sponsorship, education), as recommended by the treating facility; ongoing psychiatric treatment; medication management, as recommended; and individual mental health therapy (at least weekly). Phase Two still further provided:

> Before implementing unsupervised custody for Mr. Norwood, the evaluator recommends that Mr. Norwood participate in individual mental health counseling for at least sixteen weeks with demonstrated proof of his continued participation in therapy thereafter. In totality, therapy should occur on a weekly basis for at least one year.

[5] Phase Three provided as follows:

- Sean Norwood is allowed to proceed through Phase [Three] of the titrated schedule as follows: 1) First, 3 months of supervised visitation integration with Mr. Norwood's wife, Cassi Dymond; 2) Then, 3 months of supervised visitation integration with Cassi Dymond's daughter; 3) Finally, 6 months of unsupervised visitation with full integration.

- Sean Norwood shall continue alcohol and drug testing two times per month with BAL and Associates during Phase Three, with the results being forwarded to the Court and the parties' attorneys.

- Sean Norwood shall continue psychiatric or mental health treatment and abstinence from alcohol during phase three in order to maintain his unsupervised physical custody arrangement.

Finally, the July 2022 Judgment provided that "all other provisions of previous judgments not in conflict or modified by this judgment shall remain in full force and effect."[6]

In January 2023, the parties again returned to court to address Mr. Norwood's request for unsupervised visitation—Phase Four. Following a hearing, the trial court granted Mr. Norwood's request and set forth a detailed visitation schedule in its judgment (the "January 2023 Judgment"). The trial court also included in the January 2023 Judgment the following provisions:

---

Once Mr. Norwood has shown proof of sixteen weeks of individual therapy with continued weekly therapy attendance and participation thereafter, and random alcohol/drug screens, as well as ongoing compliance with psychiatric treatment, medication management, and Alcoholic Anonymous meetings and/or other abstinence-based activities, the evaluator would recommend that Mr. Norwood begin unsupervised custody every other weekend beginning on Saturday at 9:00 a.m. to 1:00 p.m. and Sunday at 9:00 a.m. to 1:00 p.m."

Phase Three further provided that Mr. Norwood would continue undergoing random alcohol and drug testing two times per month. Still further, Phase Three provided that "[i]f Mr. Norwood shows negative results, Mr. Norwood would continue to adhere to his psychiatric/mental health treatment and abstinence-promoting activities as normally expected and unsupervised custody would continue." As discussed elsewhere in this opinion, Phase Four provided for certain terms and conditions to exercise unsupervised visitation; it had a six-month term. Phase Five provided for certain terms and conditions to exercise overnight visitation; it had a unlimited term.

[6] In January 2023 the trial court signed a written judgment containing the provisions of the July 2022 oral judgment.

- SEAN NORWOOD shall begin parenting classes with Betsy Backe for twelve (12) weeks.[7]

- [T]he visitation set forth herein shall be for six months and after that the Court will address any vacation and holiday requests at a later date.

- [T]he drug testing and all other provisions related [to] compliance shall remain in place for six months and then the Court will revisit those provisions.

Finally, the January 2023 Judgment provided that "all other prior judgments rendered, not in conflict with this particular judgment shall remain in full force and effect."

Thereafter, Mr. Norwood filed a motion to implement Phase Five—overnight visitation—given the passage of six months coupled with his compliance with the prior judgments.[8] In response, Ms. Buuck filed three exceptions: no cause of action, prematurity, and res judicata. At the August 2023 hearing, five witnesses testified: Dr. Barry Pilson, Mr. Norwood's mental health therapist; Dr. Christopher Meyers, Mr. Norwood's psychiatrist; Ms. Backe, Mr. Norwood's parenting class teacher; Mr. Norwood; and Ms. Buuck. At the hearing, the trial court overruled Ms. Buuck's exceptions and granted Mr. Norwood's motion. In its written judgment, the trial court included the following provisions:

- [T]he Court finds that SEAN NORWOOD has substantially complied with the titrated schedules of [P]hases [O]ne through [F]our, specifically that he has maintained sobriety and abstinence for six months since the implementation of the [P]hase [F]our visitation schedule.

- SEAN NORWOOD shall continue to go to random alcohol and drug screenings and continue his mental health treatment consistent with the recommendation of his doctors.

---

[7] Parenting classes were not required by Dr. Luscher's titrated visitation schedule; the trial court added this extra compliance requirement.

[8] At the time of filing of Mr. Norwood's motion to implement Phase Five, he was in Phase Four, which began in January 2023. In Phase Four, he was afforded unsupervised visitation on alternating Saturdays and Sundays from 9 a.m. to 6 p.m. and Wednesdays from 5 p.m. to 7 p.m. Phase Four had a six-month term.

4

- [I]f SEAN NORWOOD were to show a positive alcohol or drug screening result, unsupervised visitation would immediately cease until such time as he completed [P]hases [T]wo and [T]hree, A through D, as set forth in the Consent Judgment between the parties and signed by the court on June 30, 2021.

- [T]he Court finds that it has not addressed any modification of custody and that the *Bergeron* [*v. Bergeron*, 492 So.2d 1193 (La. 1986)] standard does not apply (the "August 2023 Judgment").

Finally, the August 2023 Judgment provided that "all other prior judgments rendered, not in conflict with this particular judgment shall remain in full force and effect." This appeal followed.[9]

## STANDARD OF REVIEW

As noted at the outset, this is a child-visitation case. The standard of review in such cases is as follows:

- "Great weight is given to the trial court's determination in matters of visitation, and the court's judgment will not be overturned unless a clear abuse of discretion is shown." *Main v. Main*, 19-0503, p. 7 (La. App. 5 Cir. 2/19/20), 292 So.3d 135, 142 (citing *Zatzkis v. Zatzkis*, 632 So.2d 307, 320 (La. App. 4th Cir. 1993)).

- "[I]n visitation cases, the trial court decisions are based heavily on factual findings" *Garner v. Thomas*, 08-1448, p. 9 (La. App. 4 Cir. 5/28/09), 13 So.3d 784, 789 (citing *Palazzola v. Mire*, 08-0075 (La. App. 4 Cir. 1/7/09), 10 So.2d 748). "[A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Evans v. Lungrin*, 97-0541, 97-0577, p. 6 (La. 2/6/98), 708 So.2d 731, 735 (citation omitted).

---

[9] Ms. Buuck filed an expedited supervisory writ application seeking review of the denial of her exceptions. This Court denied her writ. *Buuck v. Norwood*, 23-0683 (La. App. 4 Cir. 10/23/23) (*unpub.*). Ms. Buuck does not raise the denial of her exceptions as an issue on appeal. As Mr. Norwood points out in his appellee brief, because of Ms. Buuck's designation of the record, none of the pleadings are contained in the record on appeal. But, Ms. Buuck's her writ application contains copies of Mr. Norwood's motion to implement Phase Five, Ms. Buuck's exceptions to the motion, and Mr. Norwood's response to those exceptions. This Court has reviewed the contents of Ms. Buuck's writ application in deciding this appeal *See* La. Unif. R. Ct. App., Rule 2-1.14 (providing that "[a]ny record lodged in the Court of Appeal may, with leave of court, be used, without necessity of duplication, in any other appeal or writ application").

- "[I]n child . . . visitation matters as in other areas of the law, '[t]he application of statutes is a question of law[,]' and '[a]n appellate court reviews questions of law de novo to determine whether the trial court was legally correct or incorrect.'" *Barak v. Saacks*, 21-0756-59, p. 8 (La. App. 4 Cir. 10/12/22), 367 So.3d 656, 662, *writ denied*, 22-01734 (La. 1/11/23), 352 So.3d 987 (quoting *Durand v. Rose*, 22-0300, p. 7 (La. App. 4 Cir. 9/15/22), 366 So.3d 484, 491).

The applicable standard of review governing a trial court's ruling on a motion to enforce a compromise agreement is the manifest error standard. *Eckstein v. Becnel*, 17-0868-70, p. 8 (La. App. 4 Cir. 6/27/18), 250 So.3d 1046, 1053 (citation omitted) (observing that "[a] district court's judgment regarding the existence, validity and scope of a compromise or settlement agreement hinges on its finding of the parties' intent—an inherently factual finding").

## DISCUSSION

Although Ms. Buuck assigns three error on appeal,[10] we reframe the issues she presents as two-fold: whether the trial court erred in retroactively waiving the weekly individual therapy requirement (the "Therapy Requirement") as to Phase Four; and whether the trial court erred in prospectively modifying the Therapy

_____

[10] Ms. Buuck assigns the following three errors on appeal:

1. The trial court erred by waiving the terms of the parties' Consent Judgment on custody, which required Mr. Norwood to complete the requirements of "Phase [Four]" before being entitled to custody under "Phase [Five]"

2. The trial court erred by modifying a prior consent judgment of the parties wherein they agreed that Mr. Norwood would continue weekly therapy through the completion of Phase [Five].

3. The trial court erred by starting overnight visitation with the minor child [Phase Five] when Mr. Norwood represented to the court that he complied with the weekly therapy requirements and the testimony at trial and the evidence at trial documented that Mr. Norwood did not comply with weekly therapy in 2022 or 2023.

Mr. Norwood points out that Ms. Buuck fails to address these issues separately in her brief. Nonetheless, Mr. Norwood's three counter arguments are as follows: (i) that he complied with the judgments as necessary to implement Phase Five; (ii) that the trial court did not modify the June 2021 Consent Judgment, and (iii) that the trial court did not err in allowing overnight visitation.

6

Requirement as to Phase Five.[11] We also address whether the trial court erred in finding that Mr. Norwood complied with his obligations under the titrated visitation schedule as modified by the trial court such that he is entitled to exercise overnight visitation pursuant to Phase Five. In sum, we organize our analysis around the following three issues: (i) retroactive waiver; (ii) prospective waiver; and (iii) compliance.

**Retroactive Waiver**

Ms. Buuck's first argument is that the trial court erred in retroactively waiving the Therapy Requirement as to Phase Four. Ms. Buuck emphasizes that Mr. Norwood did not seek to modify the June 2021 Consent Judgment; rather, he sought to enforce it—to implement Phase Five.[12] Ms. Buuck also emphasizes that the retroactive waiver issue is a legal issue, not a factual issue.[13] Given Mr. Norwood's undisputed non-compliance with Phase Four's Therapy Requirement,

---

[11] The thrust of Ms. Buuck's argument is that the parties, in the June 2021 Consent Judgment, agreed that Mr. Norwood would comply with the requirement of weekly individual therapy through Phase Five—overnight visitation. In support, Ms. Buuck cites the following provision that is repeated verbatim in both Phases Four and Five of the titrated visitation schedule:

> During this time, Mr. Norwood would continue to undergo random alcohol and drug screenings, as well as continued participation in psychiatric treatment, medication therapy, weekly individual therapy, and regular sobriety-related activities (AA attendance, sponsor meetings) with sufficient proof documenting his involvement in these activities.

[12] As discussed elsewhere in this opinion, Ms. Buuck acknowledges that Mr. Norwood made a request to modify prospectively the requirement as to Phase Five, but she contests the trial court's granting of that request.

[13] It is undisputed that Mr. Norwood did not attend weekly individual therapy with his treating mental health therapist, Dr. Pilson, during the relevant period. At the hearing, Dr. Pilson, who specializes in substance abuse treatment, testified that the frequency of Mr. Norwood individual therapy sessions was reduced to monthly instead of weekly and that some sessions were missed. But, Dr. Pilson opinioned that this reduction was his prerogative, as a treating physician, and that the missed sessions had not impacted the efficacy of the treatment. Dr. Pilson further testified that Mr. Norwood had been consistent in his treatment, and that he "check[ed] all the boxes" for someone who is likely to remain abstinent. Dr. Pilson further testified that he believed that continued monitoring and participation in SMART Recovery meetings were sufficient measures for abstinence maintenance in this case and that individual therapy was no longer necessary.

Ms. Buuck contends that the trial court legally erred in granting Mr. Norwood's request to implement Phase Five.

Rejecting Ms. Buuck's non-compliance argument, the trial court, in its written reasons for judgment, observed as follows:

> Ms. Buuck argues that [Mr. Norwood] has not met said obligations by failing to abide by the terms of Phase Four as detailed in the original titrated schedule authored by Dr. Luscher. Specifically, he was to "undergo random alcohol and drug screenings, as well as continued participation in psychiatric treatment, medication therapy, weekly individual therapy, and regular sobriety-related activities (AA attendance, sponsor meetings) with sufficient proof documenting his involvement in these activities." Importantly, the June [2021 C]onsent [J]udgment has been modified by subsequent orders of the Court. Specifically, the Court ordered Mr. Norwood [in the July 2022 Judgment] to "continue psychiatric or mental health treatment and abstinence from alcohol during [P]hase [T]hree in order to maintain his unsupervised physical custody arrangement." He was then ordered [in the January 2023 Judgment] to continue "the drug testing and all other provisions related [to] compliance" and to "begin parenting classes for twelve (12) weeks."

As the trial court observed, the flaw in Ms. Buuck's argument is that she fails to acknowledge that the trial court modified the Therapy Requirement in its two subsequent judgments—the July 2022 and January 2023 judgments. Because Ms. Buuck failed to file a motion for new trial or an appeal from either of those judgments, those judgments are now final. Neither of those judgments imposed a requirement of attending weekly individual therapy on Mr. Norwood. Ms. Buuck's retroactive waiver argument is unpersuasive.

**Prospective Modification**

The second part of Ms. Buuck's argument is that the trial court erred in granting Mr. Norwood's request to modify the Therapy Requirement prospectively as to Phase Five. Mr. Norwood's motion to implement Phase Five (the "Motion") included the following paragraph:

8

> Mr. Norwood recognizes that Phase [Five] calls for continued mental health treatment. He respectfully asks the Court to consider discontinuing this requirement, as both Dr. Myers and Dr. Pilson have advised him that continued therapy is no longer medically or therapeutically necessary. Since Mr. Norwood is under this Court's order to continue, he has continued to attend, but both doctors concur that treatment is unnecessary at this point. Mr. Norwood is not on any medication, and has not been on medication for 3 years now, so there is no need to see any physician for medication management.

Over Ms. Buuck's objection, the trial court granted this request in the August 2023 Judgment; and the trial court ordered that Mr. Norwood "continue his mental health treatment consistent with the recommendation of his doctors."

Ms. Buuck contends that the trial court's modification of the Therapy Requirement was improper and that the modification left Mr. Norwood's mental health treatment to his treatment providers' recommendation. Ms. Buuck further contends that the trial court could not modify the Therapy Requirement because it was part of a compromise agreement under La. C.C. art. 3071.[14] She cites the principle that "courts will not declare [compromise agreements] void without a clear showing that they violate good morals or public interest." *Omega Gen. Constr., L.L.C. v. Recreation & Parks Comm'n for Par. of E. Baton Rouge*, 21-0334, p. 12 (La. App. 1 Cir. 12/22/21), 341 So.3d 53, 63, *writ denied*, 22-00426 (La. 5/3/22), 337 So.3d 162 (citation omitted). She stresses Mr. Norwood's failure to allege any ground of invalidity of the compromise. She, thus, contends it was legal error for the trial court to modify the June 2021 Consent Judgment.

Mr. Norwood's counters that the trial court did not modify the June 2021 Consent Judgment; rather, he contends that the Therapy Requirement was never

---

[14] La. C.C. art. 3071 defines a compromise agreement as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."

9

intended to extend beyond one year absent a treatment provider's recommendation. Citing Dr. Luscher's statement that "[i]n totality, [individual] therapy should occur on a weekly basis for at least one year," Mr. Norwood contends that neither the June 2021 Consent Judgment nor the titrated visitation schedule, read as a whole, mandates compliance with the Required Therapy throughout all the phases. He points out that the June 2021 Consent Judgment states that "the parties are to implement the titrated custody schedule authored by Dr. Luscher, attached hereto at Exhibit A." Mr. Norwood contends that if the Therapy Requirement had been an important provision, the June 2021 Consent Judgment could have explicitly provided same.

Mr. Norwood also emphasizes that in the titrated visitation schedule, Dr. Luscher defers multiple times to the recommendation of the treating provider.[15] Mr. Norwood contends that the language in Phases Four and Five regarding "continued participation" in weekly individual therapy incorporates participating as recommended by his treatment provider. Indeed, he submits that if Dr. Luscher intended for the weekly therapy to continue either throughout all the phases or indefinitely, she would not have provided for the therapy to last "for at least one year."

While Mr. Norwood makes valid points regarding the interpretation of the titrated visitation schedule that the parties adopted in the June 2021 Consent Judgment, we find it unnecessary to reach that issue.[16] Instead, we conclude that

---

[15] For example, Phase One required Mr. Norwood complete a substance abuse assessment and follow the recommendation of the assessor. Phase One provided Mr. Norwood should undergo random alcohol and drug screening at least three times per month, but Dr. Luscher deferred to the screening protocol of the professional treating Mr. Norwood. Phase Two mandated Mr. Norwood comply with the maintenance treatment recommended by the treating professional.

[16] Nonetheless, we observe that Ms. Buuck's argument that the Therapy Requirement was intended to continue throughout Phase Five is problematic in that Phase Five has an unlimited

the trial court, in the August 2023 Judgment, did not modify the titrated visitation schedule or the June 2021 Consent Judgment; the trial court modified its own prior judgments—the July 2022 and the January 2023 judgments. Indeed, what Mr. Norwood requested in the Motion was not to modify the Therapy Requirement in the June 2021 Consent Judgment; rather, what he requested was to have "the Court mandated therapy and doctor's visits . . . lifted." His request was directed to court-mandated requirement set forth in the July 2022 and August 2023 judgments. Those judgments required Mr. Norwood to continue psychiatric or mental health treatment. The trial court granted Mr. Norwood's request.

Although Ms. Buuck acknowledges that the trial court has modified other aspects of the original titrated visitation schedule, such as visitation time, she contends that the Therapy Requirement is not modifiable.[17] Ms. Buuck's argument is that the Therapy Requirement is not a modifiable custody or visitation provision but an agreed-upon safeguard of the parties' compromise agreement. Ms. Buuck's attempt to unlink the Therapy Requirement from the overall titrated visitation schedule is misplaced. *See Richardson v. Richardson*, 07-0430, pp. 17-18 (La. App. 4 Cir. 12/28/07), 974 So.2d 761, 773 (rejecting father's argument that a drug

_____

term. This argument, thus, would impose an open-ended therapy requirement on Mr. Norwood. The jurisprudence has held that an open-ended therapy requirement is improper and has limited such a requirement to one year. *See Beene v. Beene*, 43,845, p. 7 (La. App. 2 Cir. 10/22/08), 997 So.2d 169, 174 (observing that "[w]hile we agree the need for counseling is in the best interest of the child . . .we amend the judgment to cease this requirement one year from its imposition"). Consistent with the jurisprudence, Dr. Luscher, in the titrated visitation schedule, recommended that the total duration of the weekly therapy be for at least a year.

[17] Ms. Buuck concedes that custody judgments are never final. *See* Sarah Abramowicz, *Contractualizing Custody*, 83 FORDHAM L. REV. 67, 80, n.60 (2014) (observing that "[t]he traditional rule in most jurisdictions is that courts are not bound by parents' custody agreements even when reached at the time of separation or divorce, and instead must look to the welfare of the child" and citing *Watson v. Watson*, 45,652 (La. App. 2 Cir. 08/11/10), 46 So.3d 218, for the proposition that "[i]f the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.").

treatment order was separate from trial court's custody and visitation orders). The Therapy Requirement is part of the titrated visitation schedule that the trial court modified in its July 2022 and January 2023 judgments.

Based on the experts' testimony, the trial court granted Mr. Norwood's request and modified its requirement of continuing mental health treatment in its prior judgments. As the trial court observed in its written reasons for judgment, this modification was supported by the evidence presented at the August 2023 hearing:

> Dr. Pilson and Dr. Meyers both testified that Mr. Norwood has remained abstinent from alcohol and has participated fully in his substance abuse and mental health treatment as ordered by the Court. The mental health professionals also concurred that Mr. Norwood's prognosis is positive, and that he does not need weekly therapy or medication. He is monitored and regularly attends alcohol anonymous meetings, which his doctors believe is sufficient.

We cannot conclude that the trial court erred in modifying the treatment mandate set forth in its prior judgments. Ms. Buuck's prospective modification argument is unpersuasive.

**Compliance**

The final issue we address is whether the trial court erred in finding that Mr. Norwood complied with his obligations under the titrated visitation schedule as modified by the trial court such that he is entitled to implement Phase Five—overnight visitation. As Mr. Norwood points out, the record supports the trial court's finding of his compliance. The trial court's determination of compliance is supported by Mr. Norwood's treating professionals' testimony. Both Dr. Pilson and Dr. Meyers testified that continuing treatment was no longer necessary. Moreover, Ms. Backe testified that Mr. Norwood completed the court-required parenting classes. Additionally, Mr. Norwood testified that he regularly attended

SMART recover meetings. And, it is undisputed that Mr. Norwood has tested negative.

In this regard, we find instructive the trial court's conclusion in its written reasons for judgment, which was as follows:[18]

> This case has seen the appointment of a custody evaluator, visitation supervisor, therapist, psychiatrist, and parenting supervisor. The overwhelming consensus is that Mr. Norwood has done the work and checks all the boxes of someone who is not likely to relapse, and no evidence or testimony has been presented that would controvert this fact.

Based on our review of the record, we cannot conclude that the trial court erred in determining Mr. Norwood complied with Phase Four as modified by the trial court and was entitled to implementation of Phase Five.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**

---

[18] As an alternative basis for its ruling, the trial court found that Mr. Norwood's motion to implement Phase Five could be viewed as a motion to modify visitation. The trial court engaged in a best interest analysis under La. C.C. art. 134 and concluded that it was in S.N.'s best interest to implement Phase V.